Larry CRAWFORD, Southwestern Bell
Media, Inc., and Southwestern Bell
Yellow Pages, Inc., Petitioners,

v.

ACE SIGN, INC., Respondent.

No. 95–1199.

Supreme Court of Texas.

Feb. 9, 1996.

Appealed from Beaumont Court of Appeals, Ninth Judicial District; Don Burgess, Justice.

D. Brent Wells, J. Lawton Henry, James E. Cuellar, Ernest Gordon Fielder, Houston, Leanne Johnson, Michael J. Truncale, Beaumont, for Petitioners.

Jon B. Burmeister, Beaumont, for Respondent.

PER CURIAM.

Whether nonperformance on a contract is actionable under the Texas Deceptive Trade Practices–Consumer Protection Act, Tex.Bus. & Com.Code §§ 17.41–17.63, is the dispositive issue in this case. We hold it is not.

Ace Sign Inc. and James R. Willett, the President of Ace Sign, sued Larry Crawford, Southwestern Bell Media Inc., and Southwestern Bell Yellow Pages Inc. for omission of a yellow page advertisement from the 1989–90 telephone directories in Jefferson County, Texas. Crawford, a sales representative for Yellow Pages, met twice with Willett in the fall of 1989 to discuss Ace Sign's late payment on its 1988–89 advertisement

and the possible renewal of its advertisement in the 1989–90 directories.

Crawford made several statements at these meetings that are central to this case. Crawford told Willett that businesses like Ace Sign depend heavily on exposure in the yellow pages, and he explained that Ace Sign could expect its business to grow at least 70–80% during the next year with an advertisement. He also told Willett that Ace Sign would have to pay for the next year up front because it had fallen behind on its previous payments. Finally, Crawford said that if Ace Sign paid the full price up front, then its advertisement would appear in the Beaumont, Port Arthur, and Mid–County yellow pages directories in 1989–90.

The parties executed a written contract for advertising in the 1989–90 directories, and Ace Sign paid the full contract price up front. When the ad did not appear in the 1989–90 directories, Ace Sign and Willett sued all three defendants for breach of contract, negligence, unconscionable conduct under Section 17.50 of the DTPA, and violation of Sections 17.46(b)(5), (7), and (12) of the DTPA laundry list. All three defendants moved for summary judgment.

The trial court held that Ace Sign and Willett's only cause of action was for breach of contract and that their recovery was limited by contractual limitations on liability. The trial court rendered a take-nothing judgment on the negligence claim based on our decision in *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex.1991) (barring negligence claims based on pure economic loss arising from the failure to publish a yellow pages advertisement). The trial court also rendered a take-nothing judgment on all DTPA claims, finding no evidence of unconscionable conduct or a laundry list violation. In the final judgment, all three defendants stipulated that they had breached the contract, that Ace Sign was entitled to a refund of the contract price, and that Ace Sign was entitled to its attorney's fees, "which the parties stipulated would be the sum of $18,000.00."

The court of appeals affirmed the trial court's judgment in part and reversed it in part. 905 S.W.2d 794. The court of appeals agreed that Ace Sign had not stated a cause of action for unconscionable conduct under the DTPA or for negligence. As to Ace Sign's laundry list claim, however, the court of appeals stated that "the deposition testimony of Willett raises a fact issue concerning misrepresentations made by Crawford," [1] and reversed that portion of the trial court's judgment.

While it has long been the rule in Texas that mere nonfeasance under a contract creates liability only for breach of contract, *Crim Truck & Tractor Co. v. Navistar International Transportation Corp.*, 823 S.W.2d 591, 597 (Tex.1992); *International Printing Pressmen & Assistants' Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729, 735–36 (Tex.1946), courts and commentators have struggled to clarify the boundary between contract claims and other causes of action. *See* William Powers, Jr., *Border Wars*, 72 Tex.L.Rev. 1209, 1209 (1994) (describing the tension between contract law and tort law as "just one of several border wars between and among American law's basic paradigms"). For example, in *DeLanney*, the plaintiff alleged that the failure to run a yellow pages advertisement breached a common-law duty to fulfill contracts with reasonable care, skill, and diligence. *DeLanney*, 809 S.W.2d at 494. In deciding whether the facts in that case could sustain a cause of action for negligence, this Court considered both the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff. We noted that a plaintiff could pursue a cause of action in tort if the defendant's conduct could have resulted in liability even in the absence of a contract between the parties. "Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Id.* The fact that

---

1. The court of appeals affirmed the summary judgment against Willett on all claims, finding that he had not preserved error in the trial court.

905 S.W.2d at 799. Willett did not appeal this ruling.

DeLanney sought recovery only for economic loss was also significant: "Bell's duty to publish DeLanney's advertisement arose solely from the contract. DeLanney's damages, lost profits, were only for the economic loss caused by Bell's failure to perform. Although DeLanney pleaded his action as one in negligence, he clearly sought to recover the benefit of his bargain with Bell. We hold that Bell's failure to publish the advertisement was not a tort." *Id.* at 495.

In addition to tackling the blurred distinction between tort and contract law, this Court has also differentiated between contract and DTPA causes of action. In *Ashford Development, Inc. v. USLife Real Estate Services*, 661 S.W.2d 933 (Tex.1983), Ashford needed financing on a planned construction project and paid a finders fee to USLife, the entity charged with obtaining financing on Ashford's terms. When no satisfactory lender emerged, Ashford sued USLife to recover its finders fee and also alleged violation of the DTPA. We agreed that the summary judgment against Ashford on its DTPA claim was proper. "An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Id.* at 935. *See also Helms v. Southwestern Bell Tel. Co.*, 794 F.2d 188, 191 (5th Cir.1986) (dismissing a DTPA claim arising out of errors in a published yellow pages advertisement because "[t]he 'misrepresentation' alleged by the Helmses was nothing more than Southwestern Bell's failure to perform its promise to correctly print the ad"); *Dura–Wood Treating Co. v. Century Forest Indus., Inc.*, 675 F.2d 745, 756 (5th Cir.), *cert. denied*, 459 U.S. 865, 103 S.Ct. 144, 74 L.Ed.2d 122 (1982) ("Dura–Wood argues it is deceptive to enter into a contract and later breach that contract, since Dura–Wood entered the contract believing Century Forest actually would perform. However, an allegation of breach of contract—without more—does not constitute a false, misleading, or deceptive action such as would violate Section 17.46 of the DTPA."); *Farina v. Southwestern Bell Media, Inc.*, 658 F.Supp. 826, 828 (S.D.Tex. 1987) (holding that the plaintiff could recover only on his contract, and not under the DTPA, in a suit involving the failure to publish a listing in the yellow pages); *Holloway v. Dannenmaier*, 581 S.W.2d 765, 767 (Tex. Civ.App.—Fort Worth 1979, writ dism'd) (noting that "mere failure to later perform a promise does not constitute misrepresentation" within the meaning of the DTPA).

Ace Sign seeks to avoid the effects of the *Ashford* rule by alleging that Crawford made several misrepresentations during the meeting at which Willett agreed to renew Ace Sign's yellow pages contract. Thus, according to Ace Sign, this case involves more than mere nonperformance under the contract, making it actionable under the DTPA laundry list provisions. We find this analysis unpersuasive.

In reviewing a summary judgment motion, we take all evidence offered by the nonmovant as true and resolve all doubts regarding the evidence in favor of the nonmovant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Applying this standard, we assume that Crawford made the following representations to Willett:

(1) that Ace Sign's ad would be published upon payment of the contract price;

(2) that Ace Sign's payment history required advanced payment for the renewal;

(3) that Ace Sign was heavily dependent on yellow pages advertising; and

(4) that a yellow pages ad would increase Ace Sign's business.

The essence of these allegations is that: (1) the defendants represented that they would perform under the contract, and (2) nonperformance means that they misrepresented that they would perform under the contract. To accept this reasoning, however, would convert every breach of contract into a DTPA claim.

Crawford's statements were nothing more than representations that the defendants would fulfill their contractual duty to publish, and the breach of that duty sounds only in contract. The *statements* themselves did not cause any harm. The failure to run the advertisement (the breach of the contract) actually caused the lost profits, and that inju-

ry is governed by contract law, not the DTPA.

In remanding the laundry list claim, the court of appeals relied upon *Posey v. Southwestern Bell Yellow Pages, Inc.,* 878 S.W.2d 275 (Tex.App.—Corpus Christi 1994, no writ). Even assuming that *Posey* was correctly decided, it does not control this case. That decision primarily turned on whether the Poseys were limited to the specific allegations of laundry list violations in their pleading, and the court of appeals held that they were not. In this case, as we have explained, the sole evidence of an alleged laundry list violation is that the defendants' representative told Ace Sign that its ad would be published upon payment of the contract price. Under our decision in *Ashford,* this failure to fulfill a promise is actionable only under a breach of contract theory and not under the DTPA.

Accordingly, the Court grants Petitioners' application for writ of error, and pursuant to Texas Rule of Appellate Procedure 170, without oral argument, reverses the judgment of the court of appeals on the existence of the laundry list claim and affirms the remainder of the court of appeals' judgment.